Good morning, or good afternoon, excuse me. I'd like to reserve a couple minutes for rebuttal. Tim Werner here on behalf of Mr. Sewell. This case is about whether the government's cross-examination of a key witness crossed the line, became improper, and why this is significant to Mr. Sewell in his case. It was significant because of what this witness had to say. The defense investigator spoke with Alicia Phillips, met with her. She was very cooperative with him. And what did she have to say? The allegations against Mr. Sewell were not true, that she did not see Mr. Sewell engaged in drug dealing at the motel. She also said that a person named Audrey was a person who was dealing drugs out of the hotel. Isn't this what at least your witness or your defense witness said? I don't know that she ever agreed with that, did she? I mean, my worry about this particular situation is that you have a witness who comes up and testifies that a person in a jail who doesn't have any counsel and may not need counsel to talk to him, but didn't have any counsel present, goes in and talks to him. This person is a government officer, knowledge, relationship with attorneys, including those who could advise Phillips, had knowledge of Phillips' rights, had information about her file and the importance in the case, and there he is in there talking with the inmate. And with that kind of a situation, then it seems to me that we're really talking about credibility, aren't we? The credibility of your witness, isn't that what the government is trying to question about, credibility? I think, like I said, I mean... I mean, to answer my question, isn't that the government's intent to question the credibility of that witness since you've got Phillips on one side who's just a poor inmate in the cell who's been visited now by this other guy who's got all these connections, who's in a different position, and now he says she says one thing and she gets on the stand and says something else? So we're really talking about credibility, aren't we? I would agree that it is appropriate to challenge the credibility of any witness who takes a stand. But there is a point, and in this case, there is a point where it crosses the line and we're not attacking mere credibility. We are making improper suggestions that are just, quite frankly, baseless. Well, I understand what your argument is, that it's improper, but again, aren't we really focusing then on what was the government trying to do? They were trying to attack the credibility of the witness. Now, whether they improperly attacked it or not, that's another question. Okay. But credibility is our question, is it not? I would agree with the caveat that the issue is whether that was improperly done. And aren't we on, after all, plain error review here? That's true, we are, Your Honor. So no objections made to the old trial court, so they have a chance to do anything about it. And yet we're going to come on appeal and suggest that these questions have crossed the line when we're talking about credibility. I think that's what I'm asking the Court to consider. I think it is valid. All right, let's go on one further. When you're establishing credibility, aren't you really talking about really the government's got two ways? One is a bias that the witness may have, and another is an unclear recollection. Isn't that also true? I mean, if they're going to challenge the witness's credibility, haven't they got to go to bias and unclear recollection? With the caveat that credibility can be challenged in a way that's improper and that line can be crossed. Well, all I'm trying to do is I'm trying to get us to the point where we are. Now, saying that the government has got to challenge somebody on bias and they've got to challenge somebody on unclear recollection, then I have to look at these questions and determine, given my plain error review, that the questions are bad, haven't I? Yes. Isn't that where I am? And you're suggesting that what happened in this case seriously affects the fairness, integrity, and public reputation given that they were challenging that. Is that what you're saying? Given that they were challenging that in an improper, obviously improper and baseless way, suggesting that the witness made improper threats and promises to the witness and carefully pursuing that line of questioning by pointing out to the jury that, hey, Mr. Investigator, you were alone with that witness. What threats did you make? What promises did you make? It has crossed that line. And by going to that level, I think there is a substantial fairness issue and a real problem with the perception of what was going on. Counsel? Sure. Counsel, if I agree with you, let's move on to whether this was really prejudicial enough in this particular case. Weren't there other witnesses who testified to Sewell's participation? Yes, Judge, there were. And I think that just one point, that this the improper suggestions were brought up during a rebuttal argument. So, again, that seed was planted in the jury's mind. And it's true that there were other witnesses, but not as to the January 11th distribution claim. In that claim, Alicia Phillips was the only witness. She was found there at the motel room with some family members. Sewell was not there. And that January 11th date represents the ending date of the drug conspiracy. So her statement given to that investigator is 180 degrees different than what she said at trial. And, like I said, she is the only witness there in terms of that January 11th transaction. But don't you believe that my colleague's question really goes again to the fairness, integrity, and public reputation part of this standard? Because if there is overwhelming evidence of this nonetheless, it doesn't affect the fairness or integrity or public reputation of the judicial proceedings, does it? Well, I don't agree that there is overwhelming evidence, as I said, focusing on the January 11th separate transaction. The other witnesses were not. Ms. Beasley testified that her participation stopped in December. So Alicia Phillips was the only person allegedly involved in January 11th. And, again, that cuts into the conspiracy, into the conspiracy allegation, because that is the ending date of the conspiracy. And there's no ñ the way that conspiracy is played, it is not on or about. That is the ending date of the conspiracy. So I think it is significant. I think that this case does reach issues of fairness, of the perception of this process when these suggestions are being made and then the jury's even being reminded during rebuttal, hey, the government thinks that this witness did something improper, be it threats or improper promises, and that's why she's saying the stuff she did. So I ñ this is a case where there is a line, but I think that that line was crossed to the point where the Court can grant this relief. Mr. Horn, you have about a minute and a half left. Do you want to save some for rebuttal? I will. Okay. Thank you. Mr. Hitt. Good afternoon, Your Honors. May it please the Court, my name is Jason Hitt. I'm the Assistant United States Attorney in this case. And there are two important points that I want to make at the outset that may not have come through in the briefing. The first deals with the context of the cross in this particular trial, very important. And the second that I'll highlight is that the issue framed throughout the briefing is whether Mr. Gillespie had or had duties or did not have duties to do certain things, and the issue is sort of framed as that's what makes the questions improper. I would submit that the issue actually in analyzing each of the issues on appeal is simply whether the questions were probative under the rules of evidence as interpreted by the courts. And on my first point about the context that I think is important for this Court, the government first became aware that Gillespie had interviewed Ms. Phillips during the cross-examination of Phillips in the government's case-in-chief. And there were no notes of the interview produced at that time. And I'm not suggesting the defense counsel had an obligation to, but it's important to understand that suddenly there's an interview being mentioned of Ms. Phillips in the cross. He was a surprise witness. There was no witness who had provided pre-trial or during trial that Mr. Gillespie would be a witness. Ms. Phillips then testified in the cross-examination by Mr. Gable, the defense counsel, to a very different interview than what Gillespie would later describe in the defendant's case-in-chief. And specifically in the transcript at 887 through 888, she describes Gillespie as an investigator who tried to subpoena me for Harvey Sewell. She denied giving Gillespie any statement. She did not recall telling Gillespie that she never saw Sewell sell drugs at the River City Motel. She said, quote, I don't even remember him asking me anything about Harvey, unquote. And she further reiterated, quote, sir, he never asked me anything about Harvey. The only person he asked me about was Audrey, unquote, which is Audrey Beasley, another of the government's cooperators. Mr. Gillespie then testifies as a surprise witness or an unknown witness. Well, that's a rebuttal witness. I mean, that's what happens. Well, government, yes, the defendant's case-in-chief. And the notes actually were produced, from what I remember, at the very earliest, at the outset of his direct. It may have been simply at the time of cross-examination, because during his direct, he was seen relying on the notes. And so to the extent that my questions were inartful, part of that is I was reacting on the fly to notes just produced. And there was no motive. I think we appreciate the context, in a sense, if you're explaining why you did what you did in a certain sense. But I guess I don't understand some of the questions. For example, implying that he had a duty to contact an attorney. I mean, that certainly was not something that the officers did when they approached him, right? Correct, Your Honor. So you knew that the officers didn't have to say, we've got to contact your attorney before they interview you. And you knew that he didn't have a duty. So I don't understand the question. Well, the question, Your Honor, is probative, again, focusing on not that he had a duty or did not. It is whether it's probative under the rules of evidence. And what that was probative of is that Gillespie was putting Ms. Phillips in jeopardy, as Judge Smith indicated in the questions to Mr. Warner. He's putting her in jeopardy. And the jury is entitled to weigh his credibility. How is he putting her in jeopardy? Well, if she gave inculpatory statements or things that either were 801 statements further into the conspiracy or implicated herself. So your officers didn't have a duty, but he did? No. The issue isn't whether they have the duty. It's whether they're credible. It weighs the credibility that they have in taking the statement in the method and manner that they take it. And this is very common in defense counsel or cross-examining law enforcement, for example, in a noncustodial way. Right, exactly. But I don't understand. I mean, I just, I fail to understand why it's probative of what putting her in jeopardy has to do with the cross-examination. Well, the jury can weigh whether Gillespie's statement can be trusted in light of what they've heard from Phillips and whether in deciding to interview her, he can contact her representative, make it an even playing field, have someone who's protecting her interests, a skilled advocate, sitting there with her to weigh the questions, particularly in light of his background in law enforcement. He knows this person has a lawyer. And if that lawyer's there, she may be less likely to implicate herself. She may be able to protect her interests. Gillespie's. No, but the way the questions, I mean, I read and reread the examination, and what I concluded was you were trying to say that the investigator was unethical. You were trying to leave the impression with the jury that this investigator was unethical and threatening. Your Honor, I don't think that that was certainly not the intent. And, again, if it was inartful in my questioning, that is not what I was attempting to do. What I was attempting to do is show that this individual knew she had a lawyer. He was very familiar with the criminal justice system. And this was the one question that I actually was objected to. And as the experienced district court judge, Judge Carlton, did a 403 analysis, he recognized it did not substantially, the prejudice did not substantially outweigh the probative value of his credibility in conducting the interview in the method and manner that he did. And I think the natural tendency in this particular case, with this particular jury, would be to draw the inference that the Court is suggesting. I think in this case you had conflicting stories. Ms. Phillips says the sky is blue. Mr. Gillespie says the sky is green. And they're not even close in terms of the details and circumstances and facts within the interview. So what's your best case that says an investigator has a duty to contact a former attorney when an investigator interviews somebody? There is no case. There is no duty. I understand that, Your Honor. And the point is that in assessing his credibility. Well, here's what you're saying. Didn't that set off an alarm because you didn't contact her? What you had to do to contact her attorney that represented her interests? I mean, what would the alarm be if there's no duty? Well, the alarm would be if she implicates herself and he turns that information over to the government. Well, if you're asking him, didn't that set off an alarm? Correct. And the alarm would be if she tells him something that affects her rights, he's in the position of having put this person in jeopardy when she has a lawyer that may have advised her, don't talk to him. Don't say anything. Don't talk about your criminal liability with Mr. Sewell or what you guys were doing over at the River City Motel. You asked, didn't you? You were not considering her rights when you interviewed her. What right did she have?  When the defense investigator talks to a witness, the defense investigator is not obligated to read her rights or anything. I understand that's a burden that the State has. But the whole point of it is by repeated questions and insinuation, it appears that the jury may well have concluded that this was an unethical guy. He didn't understand his ethical duties and he was proceeding in an unethical manner, when, in fact, there are no duties, as far as I can tell, that were violated by the investigator. Your Honor, the first point is that this jury also had the benefit of the redirect. So any confusion or any inarticulate questions. I understand the plain error argument. I'm just trying to figure out. Well, in redirect, and Mr. Gable got up and basically said, you know, you don't have these duties, do you? And you didn't violate any ethics rules that you do, do you? So the jury had the benefit of all that information. And I think when you turn to the prejudice or plain error, the jury did have all the information in front of it. In fact, during the defense closing argument at the transcript on 1094, Mr. Gable was able to successfully argue in his closing, although it was a small part. It was not as put in the brief a critical part of his closing, but it was a portion. It said that she wasn't, Ms. Phillips wasn't telling the truth, at least it doesn't sound like she was telling the truth about that, because we called Mr. Gillespie in, who went over his statement, and then he went into the content of her statement. And the issue of the rebuttal argument that Mr. Warner brought up, that was in response to basically what had been, I didn't go into it in the opening argument. I responded to this portion of Mr. Gable's statement in his closing. But I guess the point is, Your Honor, the method and manner and why he was conducting the interview in the way he did is a different thing than suggesting he was unethical. I asked him the steps he took. Did he do these things? Did he not do these things? They were factual inquiries about how he conducted the interview. And it was not the intent to portray him as some rogue investigator, but it was questions designed to elicit whether he was to be believed that he even took this statement, or the method that he did. He never described the subpoena that Ms. Phillips twice stated in her cross-examination that there was a subpoena, implying compulsion, implying that he was showing up there as she's in custody without her lawyer, being asked about a case. And he could have served a subpoena on her. There's nothing wrong with serving a subpoena on a witness to go to appear at trial, either, is there? There's nothing wrong with it, but there's also nothing wrong about asking probative questions on cross-examination about how this witness went about obtaining this statement. Take it another way. If the government was introducing Ms. Phillips' statement by way of Mr. Galecki, if we had called him as a witness and asked him, did Ms. Phillips admit all these things about her drug trafficking, the defense counsel would have every right, probative cross-examination, to go in, how did you get this statement? How did you get this statement? It's far different than saying, implying that it was done under unethical and coercive circumstances when you know it's not true. Well, I don't... There's nothing. When you know there's no duty and you imply there's a duty, then you're implying a false duty to the jury. And that was not the intent, Your Honor. I respectfully submit that the record does not suggest that. And I think that when you take it in a different context, whether there's an obligation or duty to do or not do certain things, that's the bread and butter of defense cross-examinations of all sorts of witnesses. You didn't get a signed confession. You didn't videotape it. You didn't do this. You didn't do that. Now, they might... Those aren't the questions you asked. Well, it was a different context, but that's the idea. Is there a different burden counsel on the prosecutor and defense counsel? I'm not sure I understand the question, Judge Fletcher. A different standard... Of your conduct and what your duties and responsibilities are. Yes, Your Honor. Under the case law, I believe the prosecutor is held to a much higher standard. That's right. That's right. And I think that Judge Thomas is suggesting, and I concur, that we didn't perhaps meet that standard imposed on prosecutors. And generally, I find cases like this, the questions that are at issue generally don't make a difference at all. So you kind of have to watch the line so you don't end up with arguments like this. Yes, Your Honor. I see that I'm out of time. Any further questions? I have no questions. Okay. A short response. There was a representation made that Alicia Phillips gave a different statement to Mr. Gillespie. And my account of the record is that she did not remember the investigator. She did not give a statement to the investigator stating that she had never seen Harvey Sewell sell drugs and that she just never gave a statement about Harvey Sewell. And that's at pages 887 and 888 of the record. Yeah, go ahead. My account, I think that is different in that she's coming from a position of just denying giving a statement and then the investigator is there to say, no, she did give a statement and it was very helpful to Mr. Sewell. So I do think that is different. Well, perhaps so. But I think Mr. Head does have a point that he was surprised and he's entitled to vigorously cross-exam your witness on the manner of taking the statement. You can't disagree with that. I do. And I think that in many ways this argument is about where that line is, whether the line was crossed and whether we can entitle to relief because of that. And I would agree that, you know, in the heat of battle, as Mr. Hitt said, you know, we do our best to be advocates, but mistakes can be made. And our view is that one was made in this case. Okay. In this case, only the January 11th transaction would be involved? Your Honor, on the issue of prejudice, of whether this error affected Mr. Sewell, the January 11th transaction, I would say it's not. But that takes a yes or no answer, really. No, it is not. But that is our strongest case for prejudice, is the January 11th, because Alicia Phillips is the only witness there. And then that, again, blends into the security count, because January 11th is the ending. Thank you. Thank you. Thank you both for your arguments. I appreciate your arguments and briefing in the case. The case will be submitted. Thank you.
judges: Fletcher B. , Thomas, Smith M.